# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 4, 2022              Decided June 3, 2022

No. 21-5074

PATRICK EDDINGTON,
APPELLANT

v.

UNITED STATES DEPARTMENT OF DEFENSE,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:20-cv-00442)

———

*Matthew V. Topic* argued the cause for appellant. With him on the briefs was *Joshua Burday*.

*Anna D. Walker*, Assistant U.S. Attorney, argued the cause for appellee.  With her on the brief were *R. Craig Lawrence* and *Peter C. Pfaffenroth*, Assistant U.S. Attorneys.  *Daniel Schaefer*, Assistant U.S. Attorney, entered an appearance.

Before: HENDERSON and WALKER, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

2

KAREN LECRAFT HENDERSON, *Circuit Judge*: In July 2019, Patrick Eddington used an email application on his laptop to send Freedom of Information Act (FOIA) records requests to fourteen components of the U.S. Department of Defense (DOD). Not having received any response, he filed a complaint in district court almost seven months later seeking an order to require the DOD to conduct a search for and promptly produce the requested records. Eddington attached copies of the emails to the complaint. The DOD responded by moving for summary judgment, relying on a DOD official's declaration that all fourteen components had searched for but had not received any request from Eddington. The district court granted the DOD's motion, concluding that Eddington had not created a genuine dispute as to the DOD's "receipt" of the requests under 5 U.S.C. § 552(a)(6)(A)(i). We agree and affirm the district court.

## I. BACKGROUND

The relevant FOIA provision provides: "[U]pon any request for records made" pursuant to FOIA, a federal agency must "determine within 20 days . . . *after the receipt* of any such request whether to comply with such request." 5 U.S.C. § 552(a)(6)(A), (A)(i) (emphasis added).

3

Eddington alleged that on July 18 and 19, 2019, he emailed FOIA requests[1] to fourteen components[2] of the DOD. Eddington Decl. ¶¶ 8–24, J.A. 55–58. After sending each email with the "Airmail email application" available on the "Apple App Store," Eddington "made a portable document format (PDF) copy of the email and saved it to the appropriate folder on [his] Macbook Air computer." *E.g.*, *id.* ¶ 11, J.A. 55. In the ensuing six to seven months, Eddington received no response from any of the components but did not follow up to confirm receipt. Instead, on February 14, 2020, he filed a complaint in district court seeking an order requiring the DOD "to conduct a reasonable search for records and to promptly produce all non-exempt requested records."

On June 10, 2020, the DOD moved for summary judgment, arguing that Eddington had failed to establish a genuine dispute of material fact regarding the DOD's receipt of his requests. With its motion, the DOD attached the declaration of Mark Herrington (Herrington Declaration), Associate Deputy General Counsel in the DOD's Office of

---

[1]    The requests sought information related to the DOD's acquisition of information regarding individuals and organizations not affiliated with the DOD under DOD Directive 5200.27. Compl. ¶ 6, J.A. 2; Eddington Decl. ¶ 9, J.A. 55; *see* DOD Directive 5200.27, Acquisition of Information Concerning Persons and Organizations Not Affiliated with the Department of Defense (Jan. 7, 1980).

[2]    The fourteen components are: the Office of the Secretary of Defense, the Defense Intelligence Agency, the National Geospatial Intelligence Agency, the U.S. Army and ten Commands (Africa, Central, Cyber, European, Indo-Pacific, Northern, Southern, Special Operations, Strategic and Transportation).

4

General Counsel. J.A. 48–53. The Herrington Declaration described his outreach efforts to the components after Eddington filed suit, the components' searches and the components' FOIA response procedures, including that "[e]ach component has a standard practice of responding to FOIA requests to acknowledge receipt, even if they have not finished processing the request." *See id.* ¶ 5–6, J.A. 49. None of the components responded, Herrington explained, because "none of the fourteen [DOD] components" had received the requests. *Id.* ¶ 3, J.A. 48.

On January 25, 2021, the district court granted the DOD's motion. *See Eddington v. U.S. Dep't of Def.*, No. 1:20-cv-442, 2021 WL 244947 (D.D.C. Jan. 25, 2021). It explained that if "an agency moves for summary judgment on the ground that it has not received a plaintiff's FOIA request, the plaintiff bears the burden of demonstrating a genuine dispute as to the agency's receipt of the request." *Id.* at *2 (citing *Pinson v. U.S. Dep't of Just.*, 69 F. Supp. 3d 108, 114 (D.D.C. 2014)). It then concluded that Eddington's emails and declaration were insufficient to overcome the presumption of good faith afforded the government's declaration. *Id.* In so concluding, the court commented that Eddington's emails support his "genuinely held belief that he properly *sent* the FOIA requests" but do not "create a genuine dispute of fact as to whether any DOD component *received* a request." *Id.* (emphases in original). The district court also denied Eddington's request for discovery. *Id.* at *3. Eddington filed a timely appeal on March 22, 2021.

## II. ANALYSIS

We have jurisdiction of Eddington's appeal under 28 U.S.C. § 1291. We review the district court's grant of summary judgment *de novo*, *Mayo v. Reynolds*, 875 F.3d 11, 19 (D.C.

5

Cir. 2017) (citing *Theodore Roosevelt Conservation P'ship v. Salazar*, 661 F.3d 66, 72 (D.C. Cir. 2011)), and "the district court's limits on discovery for abuse of discretion," *Citizens for Resp. & Ethics in Washington v. Off. of Admin.*, 566 F.3d 219, 221 (D.C. Cir. 2009) (citing *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 737 (D.C. Cir. 2007)).

Eddington mounts two challenges to the district court's grant of summary judgment. First, he argues that he provided sufficient evidence to create a genuine dispute of material fact regarding the DOD's receipt of his FOIA requests. Second, he argues that the district court abused its discretion in denying discovery. We reject both challenges.

## A. RECEIPT OF FOIA REQUESTS

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although "all inferences must be viewed in a light most favorable to the non-moving party," *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 255 (1986); *Nat'l Souvenir Ctr., Inc. v. Historic Figures, Inc.*, 728 F.2d 503, 512 (D.C. Cir. 1984)), "the moving party is entitled to judgment as a matter of law if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial,'" *Stoe v. Barr*, 960 F.3d 627, 638 (D.C. Cir. 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In a FOIA action, "[s]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Evans v. Fed. Bureau of*

6

*Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020) (alteration in original) (quoting *Gallant v. NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994)).

We have not previously addressed if a plaintiff responding to an agency's summary judgment motion has presented sufficient evidence to create a genuine dispute of material fact over agency receipt of a FOIA request. But the district court has addressed the issue a number of times. *See, e.g.*, *Pinson*, 69 F. Supp. 3d at 114–15 (granting government's summary judgment motion because government provided declaration it had not received request and requester merely declared prison mail processing "irregularities" prevented FOIA request from reaching its destination); *Kanaya v. Alcohol, Tobacco, Firearm & Explosives*, 284 F. Supp. 3d 1, 2–3 (D.D.C. 2018) (granting government's summary judgment motion because agency submitted declaration attesting to non-receipt and plaintiff declared he placed request in prison mail system but admitted to putting two different agencies on address label).

Consistent with the district court's approach, it is undisputed that "receipt" of a FOIA request triggers an agency's obligation to respond. *See* 5 U.S.C. § 552(a)(6)(A)(i); *accord McGehee v. CIA*, 697 F.2d 1095, 1110 (D.C. Cir.) ("[W]hen an agency receives a FOIA request for agency records in its possession, it must take responsibility for processing the request." (internal quotation marks omitted)), *modified on reh'g,* 711 F.2d 1076 (D.C. Cir. 1983) (vacating separate part of opinion). Accordingly, as Eddington notes, if an agency moves for summary judgment and provides sufficient evidence that it did not receive a request, the requester—as the non-movant seeking "to support . . . [an] essential element[] of [his] claim," *Durant v. D.C. Gov't*, 875 F.3d 685, 690 (D.C. Cir. 2017) (fourth alteration in original) (quoting *Grimes v. District of Columbia*, 794 F.3d 83, 93 (D.C.

7

Cir. 2015))—must "come forward with proof to create a genuine dispute of fact that he sent the FOIA request to the agency *and* the agency received it," *Kanaya*, 284 F. Supp. 3d at 2 (emphasis in original) (citing *Pinson*, 69 F. Supp. 3d at 113–14). As is true for agency declarations submitted to establish the adequacy of a FOIA search for requested records, an agency's declaration attesting to a fruitless search for a request must be "relatively detailed and non-conclusory, and . . . submitted in good faith." *See SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (alteration in original) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)); *see also infra*, note 4. If it is, the declaration is accorded a presumption of good faith, which the requester cannot rebut with "purely speculative claims about the existence and discoverability of [the request]." *See SafeCard Servs.*, 926 F.2d at 1200 (quoting *Ground Saucer Watch*, 692 F.2d at 771).

Eddington argues that the district court erred in (1) relying on the Herrington Declaration, (2) concluding that the copies of his allegedly sent emails were insufficient to create a genuine dispute over "receipt" and (3) failing to apply the mailbox rule. We address each argument *seriatim*.

First, Eddington argues that it "goes well beyond any agency deference and borders on vacuous" to allow the government to prevail based solely on a declaration that it could not find a request. Appellant Br. 9. But Eddington's framing—that any declaration denying receipt after a search would warrant granting summary judgment to the government—is flawed. We afford a presumption of good faith only if we conclude that an agency's declaration is "relatively detailed and non-conclusory, and . . . submitted in good faith." *See SafeCard Servs.*, 926 F.2d at 1200 (quoting *Ground Saucer Watch*, 692 F.2d at 771); *see also Iturralde v. Comptroller of*

8

*Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) (listing ways government affidavit or declaration could be inadequate).[3]

The Herrington Declaration plainly meets that standard. As the person "in charge of coordinating the [DOD's] search" for the requests, Herrington was "the most appropriate person to provide a comprehensive [declaration]." *SafeCard Servs.*, 926 F.2d at 1201. In detailing his search for Eddington's requests, Herrington began by "contact[ing] the FOIA office in each of the fourteen listed components." Herrington Decl. ¶ 5, J.A. 49. After searches of "email files and folders, including spam folders, and the logs they keep of incoming FOIA requests," the components invariably informed him they "could not locate any evidence of having received the requests." *Id.* He explained that all of the components have a policy of responding to acknowledge receipt, "even if they have not finished processing [a] request." *Id.* ¶ 6, J.A. 49. Although the acknowledgment procedures vary, Herrington detailed that the U.S. Indo-Pacific Command's system sends an automated response to every requester after an emailed request arrives in the Command's "FOIA Organizational Mailbox." *Id.* ¶ 8, J.A. 50. Herrington successfully tested the system as part of his search for Eddington's requests. *Id.* ¶ 9, J.A. 50–51. Not finding any evidence that even one of the components received a request from Eddington, Herrington concluded "that none of the 14 [DOD] component agencies . . . received any of the 14 FOIA requests" allegedly sent by Eddington. *Id.* ¶ 11, J.A. 51.

---

[3] We also note that information asymmetry is inherent in the FOIA context. *See DiBacco v. U.S. Army*, 795 F.3d 178, 190 (D.C. Cir. 2015) (relying on government affidavit and noting that "FOIA is not a wishing well; it only requires a reasonable search for records that an agency actually has").

9

Eddington argues that the Herrington Declaration is not entitled to the presumption of good faith because it does not provide affirmative "evidence of non-receipt" but instead includes only evidence that the DOD could not locate his requests months after Eddington allegedly sent them. But Eddington ignores that the components searched for the requests in the places that routinely contain received requests: email inboxes, FOIA logs and spam folders. *See id.* ¶ 5, J.A. 49. Attempting to provide an example of receipt evidence that would not be months-old, Eddington contends that the DOD could have searched for and provided records of automatic deletions from spam folders. But Eddington does not explain how a present-day search for those records is meaningfully different from a present-day search of emails previously received by spam folders and email inboxes.[4] Accordingly, the Herrington Declaration warrants a presumption of good faith, which Eddington must rebut to prevail.

Second, Eddington argues that his declaration and PDF copies of the emails rebut the Herrington Declaration and create a genuine dispute regarding receipt. In particular, Eddington relies on district court cases to argue that he provided sufficient evidence of receipt. *See, e.g.*, *Pinson*, 69 F. Supp. 3d at 114 (once agency establishes presumption of good faith, "[t]he plaintiff must provide something more than his own declaration to create a genuine issue of material fact as to

---

[4] Eddington's arguments as to deleted spam emails manifest he challenges the *adequacy* of the DOD's search for the requests, reinforcing the similarity to other FOIA searches for government records and the use of the good faith presumption in evaluating the government's search for Eddington's requests. *See Mobley v. CIA*, 806 F.3d 568, 580–83 (D.C. Cir. 2015) (treating request for agency "to search a particular record system" as challenge to adequacy of search).

10

the agency's receipt of the FOIA request" (citations omitted)). But Eddington ignores the operative phrase in the statute: "after the receipt." *See* 5 U.S.C. § 552(a)(6)(A)(i). The PDF copies of Eddington's emails include timestamps indicating when his Airmail application processed the emails, *see, e.g.*, J.A. 5, but, as the district court observed, the emails show only that he *sent* the requests, not that any of the fourteen components *received* them. *Eddington*, 2021 WL 244947, at *2. Eddington cannot point to a single response from any of the components, not even one automatically generated from U.S. Indo-Pacific Command. Eddington's assertions that his requests were all filtered to spam folders based on all fourteen components having the same e-mail configurations and servers and that the requests were then automatically deleted amount to "purely speculative claims about the existence and discoverability" of his requests and are insufficient to overcome the presumption of good faith accorded to the Herrington Declaration. *See SafeCard Servs.*, 926 F.2d at 1200 (quoting *Ground Saucer Watch*, 692 F.2d at 771); *see also Mobley v. CIA*, 806 F.3d 568, 582 (D.C. Cir. 2015) (rejecting requester's "demand" for agency "to search a particular record system" as "mere fiat" when requester provides no evidence record system may contain responsive records).[5]

Third, Eddington argues that the mailbox rule should apply under FOIA and that the "sent" emails should be presumed "received." The common law mailbox rule establishes a rebuttable presumption of receipt upon evidence that a properly addressed piece of mail has been placed in the mail system. *See*

---

[5] Eddington's assertions became even more tenuous at oral argument when, in response to arguments raised in Eddington's reply brief, the DOD clarified that the requests would have been sent to fourteen different email servers. Oral Arg. Tr. 10:12–10:13, 10:19–10:22.

11

*Henderson v. Carbondale Coal & Coke Co.*, 140 U.S. 25, 36–37 (1891); *Rosenthal v. Walker*, 111 U.S. 185, 193–94 (1884). Aside from a brief phrase from an unreported district court case, *see Schoenman v. FBI*, No. 04-2202, 2006 WL 1126813, at *13 (D.D.C. Mar. 31, 2006) ("Without a copy of a stamped envelope showing the mailing of the request . . . [requester] cannot meet the statutory [receipt] requirement[]."), Eddington cites no instance in which courts have referred to, much less used, the mailbox rule to presume receipt of any FOIA request. Instead, Eddington points to use of the rule in other contexts and invites us to apply the rule to his emailed requests. *See, e.g.*, *Hagner v. United States*, 285 U.S. 427, 430–31 (1932) (presumption that letter deposited in post office "reached its destination" supported conclusion mail fraud indictment relying on delivery of letter was not defective); *Legille v. Dann*, 544 F.2d 1, 4–5 (D.C. Cir. 1976) (recognizing presumption of delivery and concluding summary judgment was not warranted when presumption of delivery conflicted with presumption of regularity of Patent Office procedures).

We decline his invitation because even assuming *arguendo* the presumption applies to emailed FOIA requests,[6]

---

[6] The DOD mounts a thorough argument that the mailbox rule should not apply to FOIA requests for three reasons. First, it argues that there is no statutory ambiguity in "receipt." *See Houston v. Lack*, 487 U.S. 266, 272–75 (1988) (noting general rule in civil cases is inapplicability of mailbox rule but applying rule if it was unclear whether "filed with the clerk" meant mailing or actual receipt of *pro se* prisoner's notice of appeal of denial of habeas petition). *But see Fex v. Michigan*, 507 U.S. 43, 51–52 (1993) (adopting interpretation of "shall have caused to be delivered" that required showing actual receipt, even though statute was ambiguous). Second, the DOD argues the rule would increase discovery and thus disputes about when a FOIA request was received. *See Houston*, 487 U.S. at 275 ("[T]he rejection of the mailbox rule in other contexts has been based

12

Eddington has not presented sufficient evidence to trigger the presumption. The longstanding rationale for the presumption of receipt under the mailbox rule is the regularity of successful transmissions in the U.S. Postal Service. *See Henderson,* 140 U.S. at 36–37; 9 Wigmore on Evidence § 2519, at 567 (Chadbourn rev. 1981) ("The presumption [of receipt] rests upon the supposed uniform efficiency of the postal service in delivering letters duly stamped, addressed, and mailed into its custody."). Emails, however, are not Postal Service mail. Although Eddington provides a link to download the application from the Apple App Store, he has presented no evidence that his "Airmail email application" operates with the same regularity as the Postal Service. *See* Eddington Decl. ¶ 12 & n.2, J.A. 55. He has not even provided evidence that he successfully sent other emails using the application.[7] Without evidence of the consistent functionality of the email application, there is no factual basis from which to derive a presumption of receipt. *See* 2 McCormick on Evidence § 343 (8th ed.) ("Generally, . . . the most important consideration in the creation of presumptions is probability. Most presumptions

_____

in part on concerns that it would increase disputes and uncertainty over when a filing occurred."). Finally, the DOD argues a presumption of receipt would be contrary to established FOIA precedent on the reliability of government statements. *See Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 174 (2004) ("[t]here is a presumption of legitimacy accorded to the Government's official conduct" when dealing with FOIA requests).

[7] Eddington argues that we should presume receipt based on the lack of email "bounce backs." But, again, we do not know if the Airmail application triggers bounce backs with the same regularity as the "return to sender" function of the U.S. postal service. *See generally* Elvis Presley, *Return to Sender* (Elvis Presley Music 1962).

13

have come into existence primarily because the judges have believed that proof of fact B renders the inference of the existence of fact A so probable that it is sensible and timesaving to assume the truth of fact A until the adversary disproves it."); *cf. Am. Boat Co. v. Unknown Sunken Barge*, 418 F.3d 910, 914 (8th Cir. 2005) (mailbox rule could apply to "other forms of communication" than mail "provided they are accepted as generally reliable and that the particular message was properly dispatched" (quoting *Kennell v. Gates*, 215 F.3d 825, 829 (8th Cir. 2000)).

In sum, Eddington, who filed suit over six months after saving the requests on his computer,[8] has presented insufficient evidence to create a genuine dispute regarding the DOD's "receipt" of his FOIA requests. *See* 5 U.S.C. § 552(a)(6)(A)(i).

---

[8] Eddington's main worry is that he has lost his place in the FOIA line at the components because, almost three years after he saved the emails, the components have not received the requests through the proper channels. *See* Oral Arg. Tr. 5:7–5:11. The operative FOIA provision provides for an agency response within twenty days of receipt. *See* 5 U.S.C. § 552(a)(6)(A)(i). Keeping in mind that "common sense often makes good law," *Peak v. United States*, 353 U.S. 43, 46 (1957), we note that rather than letting six months of silence go by, Eddington could have saved time by resending the emails, following up with any of the components or by filing this suit twenty-one days after saving the requests on his computer and that the government is free to expedite the processing of Eddington's requests once received, *see Pinson v. U.S. Dep't of Just.*, 69 F. Supp. 3d 108, 114–15 & n.4 (D.D.C. 2014) (finding insufficient evidence of receipt of FOIA request but encouraging applicable agency to expedite request once properly submitted).

14

## B. DISCOVERY

Eddington also briefly argues that the district court abused its discretion in failing to order discovery "on the disputed question of what happened to the requests after they were sent to the required email addresses." Appellant Br. 9. The district court noted that "[d]iscovery in FOIA cases is 'rare'" and "permissible only upon a showing that 'the agency acted in bad faith.'" *Eddington*, 2021 WL 244947, at \*3 (quoting *In re Clinton*, 973 F.3d 106, 113 (D.C. Cir. 2020)). It then concluded that Eddington had made no such showing. *Id.*

We see no abuse of discretion in the denial of discovery. *See SafeCard Servs.*, 926 F.2d at 1200 ("This court will overturn the district court's exercise of its broad discretion to manage the scope of discovery only in unusual circumstances." (citing *Brune v. IRS*, 861 F.2d 1284, 1288 (D.C. Cir. 1988)). Again, the DOD's "reasonably detailed, nonconclusory [declaration] describing its efforts" established the adequacy of its search for Eddington's requests, *Baker & Hostetler LLP v. U.S. Dep't of Com.*, 473 F.3d 312, 318 (D.C. Cir. 2006), and assertions about automatically deleted spam emails do not amount to a showing of bad faith, *see id.* ("[A] mere assertion of bad faith is not sufficient to overcome a motion for summary judgment." (citation omitted)).

For the foregoing reasons, the district court's grant of summary judgment is affirmed.

*So ordered.*